**DAVIS v. WEBSTER et al.**

No. 14716.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 19, 1945.

Rehearing Denied Nov. 16, 1945.

Fred Minor, of Denton, and Irvin J. Vogel and Arch Dawson, both of Wichita Falls, for appellant.

W. C. Boyd, of Denton, and Culbertson, Morgan, Christopher & Bailey, of Fort Worth, for appellee Marshall R. Webster.

BROWN, Justice.

Appellant, the proposed purchaser, entered into the following contract with appellee, the proposed seller, looking toward the sale of an oil and gas lease on which there were and are a number of producing wells:

"State of Texas

"County of Denton

"This Contract between Marshall R. Webster of Denton County, Texas, herein called seller, and George T. Davis of Wichita County, Texas, herein called purchaser:

"Provides:

"The seller agrees to sell and the purchaser agrees to buy an assignment of an oil and gas lease upon the following described property, to-wit:

"80 acre leasehold title out of Survey No. 14 in Block No. 13 of the H & T C Ry Co Surveys in Wilbarger County, Texas, and described as follows:

"Beginning 1226 ft S 72 W of the southeast cor. of said Section: Thence S 72 W 1320 ft; Thence N 18 W 2640 ft; Thence N 72 E 1320 ft; Thence S 18 E 2640 ft to the place of beginning; less that portion of the said 80 acres heretofore assigned by the seller herein to the Waggoner Estate, which assignment is of record in Vol. ——, Page ——, Wilbarger County, Texas, and which included approximately 55 acres leav-

ing now in the present lease approximately 25 acres.

"By this assignment the seller contracts to sell all interest that he owns in and to the above described property, except that he reserves unto himself certain 7 inch and 2 inch casing above the ground which is known as the storage pile and which is stacked adjacent to the lease house on the lease.

#### "Consideration

"The consideration for this contract is the agreement on the part of the purchaser to pay $17,500.00 cash, all of which will be due and payable when this transaction has been closed. The purchaser has this day deposited $250.00 with Cecil A. Morgan who agrees to hold the same as escrow agent, which amount will be considered as good faith money. If the purchaser refuses to go through with this transaction, assuming title proves to be good, he will forfeit said sum as liquidated damages. If however, the transaction is completed as herein contemplated said amount will be applied to the purchase price.

#### "Title

"The seller has this day delivered to the purchaser, which he acknowledges, the abstract of title to said property. It is understood that the purchaser will have said abstract certified to date at the earliest possible moment and then submit the same to his lawyer for title examination, and within five days after said abstract has been submitted to the lawyer for the purchaser he agrees to submit an opinion in writing concerning the title to said property setting forth the objections, if any, that he may have thereto. Thereafter, the seller agrees to comply with all reasonable title requirements forthwith and make an effort to comply with such requirements, if any. In the event the title is approved by the lawyer for the purchaser the parties are desirous of completing this transaction as of the 29th day of February 1944 and the seller shall be entitled to all of the oil runs up to and including that date. The purchaser will be entitled to all of the oil runs beginning March 1, 1944, and from and after that date.

"This contract executed in Duplicate Originals on this the 12th day of February, 1944.

"Marshall R. Webster    Seller
"George T. Davis    Purchaser"

Appellant's attorney objected to appellee's title because it appeared from the ab-

stract of title that one Hudson had made and filed of record an affidavit which constituted a cloud upon appellee's title. Hudson and appellee Webster had owned the lease jointly and had been dickering on a settlement as to their respective property rights in this and other leases.

Appellant's attorney required that a quit claim or sufficient release of some sort be obtained from Hudson and wife (Mrs. Hudson had some interest in the properties owned by Hudson and Webster).

It appears that on February 29, 1944, Hudson and wife came to the office of Webster's attorneys and that Hudson and wife executed and delivered a quit claim deed, covering the property in question, to Mr. Cecil Morgan, one of Webster's attorneys. Mr. Webster is the grantee in such deed.

In keeping with the correspondence had by and between Mr. Morgan, attorney for Webster, and Mr. Arch Dawson, attorney for the proposed purchaser, Davis, Mr. Morgan sent a copy of this quit claim deed to Mr. Dawson for his approval.

It appears from this correspondence that the deed was satisfactory to Mr. Dawson, but that Mr. Morgan could not get his client, Webster, to close the deal with Davis, because Hudson and Webster were having trouble in the matter of a complete settlement and adjustment of their affairs.

This correspondence was carried on between the two said attorneys until shortly prior to July 27, 1944, when Davis filed suit against Webster and against Mr. and Mrs. Hudson.

Davis alleged the making of the said contract, the depositing by him of the earnest money, the delivery of the abstract of title, the examination of same by his attorney and the objection made because of the above-mentioned affidavit; that Webster undertook to cure the said defect in the title by making a settlement with Hudson, and, through Webster's attorney, reported from time to time that progress was being made in such matter. Davis further alleged that the only matter of disagreement and dispute between Hudson and Webster was a claim by Hudson that Webster owed him some sum less than $500; that the dispute was not settled by the 29th day of February, 1944, "the date fixed for the contract at which the parties stated they were desirous of completing the sale." That plaintiff from time to time insisted that said title matter be cleared so that the purchase

could be completed; that he offered Webster the proposition of allowing a reasonable amount of the purchase price to be escrowed for the protection of the parties concerned so that a release of the cloud cast upon the title by Hudson's affidavit could be removed and the sale completed, but Webster declined to proceed on such basis and that the said cloud has never been removed.

He next alleged the facts of prior ownership which disclose how Mrs. Hudson ever had any interest in the said lease.

He alleges next that a reasonable time has elapsed for the performance of the contract; that he, the plaintiff, has at all times been ready, able, and willing to perform his part of the contract and to pay the balance of the purchase price and has at all times insisted upon performances by defendant Webster; that Webster has breached the contract; that the matters in dispute between the Hudsons and Webster are trivial in comparison with the size and importance of plaintiff's contract, and could and should have been settled long since, if a bona fide effort had been made by Webster to do so, and that Webster's breach was intentional and willful.

He next alleges that Webster has been operating the lease and receiving the oil runs therefrom "since March 1st, 1944, the date fixed by the contract at which plaintiff would be entitled to such runs"; that the amount is unknown to plaintiff but known to Webster, who became Trustee for the plaintiff for such oil runs after March 1st, 1944. He next alleges that, when the contract was made and at all times since, the leasehold estate had a reasonable market value of $25,000 and that if for any reason plaintiff cannot have the contract specifically performed then he is entitled to his damages in the sum of $7500.

We now look to the prayer. It is as follows:

"Wherefore, plaintiff prays the court that all defendants be cited to appear and answer herein; that the defendants Wm. Hudson and wife Mildred Hudson be required to answer and plead over against the defendant Webster their claims, if any they have, against the defendant Webster and against said lease, to the end that said lease may be cleared of the cloud upon the title to it cast by said affidavit, and upon default of such answer and plea that their said claims and affidavit be removed as a cloud upon the title to said lease.

"That upon the trial hereof the plaintiff have as against the defendant Marshall R. Webster a decree of specific performance requiring him to perform his said contract and convey said property to the plaintiff and upon the plaintiff's paying into the registry of the court within some reasonable time after the judgment becomes final as fixed by the court the balance of said purchase price. Also that he have an accounting with the defendant Marshall R. Webster as to all oil and other income received by said defendant from said lease since the first day of March, 1944, and for judgment upon said accounting.

"In the alternative, and in event the relief of specific performance cannot be had, then plaintiff prays that he have judgment against the defendant Marshall R. Webster for his damages in the sum of Seven Thousand Five Hundred ($7,500.00) Dollars, for his costs, and for general and special relief."

Defendant Webster denied generally the plaintiff's allegations and further alleged that, by the express language of the contract, he was only obligated to sell an assignment of all interest that he owned in the leasehold estate and that such language in law and fact amounted only to an agreement to quit-claim such title as he had; that he was further obligated only to furnish an abstract (which was done) and to comply with or make an effort to comply with any reasonable title requirements, but that he was not bound to cure title defects or to furnish a merchantable title.

He alleged that if the contract is ambiguous, then such as he had theretofore alleged was the construction intended by the parties; that the contract provides, or, if it is ambiguous, it was the intention and understanding of the parties that the plaintiff would have the abstract of title examined and a written opinion thereon furnished within five days so that the deal could be closed by February 29, 1944, and it was believed by both parties that the plaintiff could satisfy himself as to the title he would get through such quit claim assignment, with the cooperation of defendant in making an effort to help him comply with the title requirements, before February 29, 1944, and that such limited time was intended to be and was of the essence of the contract; that before the said expiration date of the contract, plaintiff made the requirements alleged, and defendant in good faith endeavored to meet same, but was unable to do so; that defendant Hudson, who filed

the affidavit in question, refused to release it without the payment of a large consideration which the defendant Webster was not required to pay under the terms of the contract; that plaintiff thereafter persisted in his efforts to force Webster to pay Hudson such sum of money as would satisfy Hudson, or to permit plaintiff to put in escrow such a sum, taken from the purchase price, as would satisfy Hudson, and have Hudson and Webster litigate over such escrowed monies; that plaintiff's requirement was not reasonable, nor was it within contemplation of the parties, and therefore plaintiff first breached the contract and should not recover.

He next alleges that, by the terms of the contract and through the failure of plaintiff's attorney to approve same before its expiration, the contract has expired; and in no event is plaintiff entitled to the oil runs until the title is actually approved.

He next alleges that the title objections are not valid and plaintiff had no right to rely upon the ex-parte affidavit made by Hudson; also that the contract lacks mutuality; and, pleading in the alternative, he alleges that if the contract be susceptible of specific performance and if the plaintiff is entitled to any oil runs, he, Webster, should be paid a reasonable compensation for his time and attention to the lease and such compensation is $6500.

He prays that Davis take nothing; that he recover the $250 earnest money, and he be quieted in his title.

On October 30, 1944, Hudson and wife filed a disclaimer.

Defendant Webster moved for an instructed verdict and was denied same.

He requested certain special issues that were refused. He made objections to the court's charge and same were overruled.

The trial court gave the jury two special issues: (1) To find the reasonable market value of the lease as of March 1, 1944. The jury answered $17,750. (2) To find the reasonable value per month of Webster's services in operating the lease, since March 1, 1944. The jury answered $146.45 per month. Plaintiff Davis made no objection to the charge, and he requested no issues. Defendant Webster made a motion for judgment notwithstanding the verdict; and plaintiff Davis made a motion for judgment "based upon the evidence in this cause and the law applicable thereto and upon the special findings and verdict of the jury, for

specific performance of the contract," and he attached a copy of such judgment, as was prayed for by him, to his motion. In this proposed judgment the trial court is required to decree specific performance of the contract and an accounting between the parties, finding that Webster has received $9,194.50 from oil runs since March 1, 1944, and that his actual expenses, and his compensation, as found by the jury, amounted to $3,807.29, and that the net receipts over and above the expenses amount to $5,387.-21, "which amount plaintiff is entitled to have offset against the purchase price of said lease."

The trial court denied plaintiff's motion and granted defendant's, and entered judgment that plaintiff take nothing.

In the judgment as rendered the trial court finds that the evidence raised no issue of fact and that a motion for judgment in favor of Webster would have been proper.

Davis appeals and presents eight (8) points: (1) The trial court erred in not rendering judgment for Davis. The contract being enforceable, unambiguous, not attacked by proof, and the evidence entitled Davis to such relief. (2) Specific performance should have been decreed because Webster refused to convey because of a dispute he had with Hudson, and such dispute disappeared when Hudson filed his disclaimer, and a specific performance decree with an adjustment of accounts should have been rendered. (3) The trial court erred in construing the contract, "if he did so construe it," as one obligating Webster only to the execution of an assignment quitclaiming his rights. (4) The trial court erred in refusing specific performance on the theory "if he did do so," that changes of conditions rendered specific performance inequitable. (5) The trial court erred in holding, "if he did so hold," that the title objection made by Davis was not reasonable and material. (6) The trial court erred in holding, "if he did so hold," that Davis was not able and willing to perform the contract. (7) There was no evidence of probative force to support the jury's finding as to the usual, customary and reasonable value of the service rendered by Webster in connection with the operation of the lease. (8) The court erred in any event, after refusing specific performance, in disregarding the verdict and in not awarding Davis the damages found by the jury.

Appellant Davis treats the contract as unambiguous. To entitle appellant to a judgment for specific performance we must hold that the uncontradicted and unequivocal evidence shows that appellant was ready, able, and willing to take such title as appellee Webster had on March 1, 1944, that being the date when Davis contends that he was entitled to receive the title and all subsequent oil runs.

To review the evidence would lengthen an opinion that is necessarily long because of a full statement of the case, and we must content ourselves with saying that the evidence is not unequivocal and uncontradicted that Davis was ready, able, and willing to accept such title as Webster had on March 1, 1944, or at any date subsequent thereto. At all times Davis was demanding that the cloud cast upon the title to the lease, by Hudson's affidavit, be removed, and in the suit brought by him he seeks to compel Hudson to plead over against Webster and recover such sum as Hudson could establish was owing to him by Webster, to the end that the cloud be by judgment removed through the satisfaction of Hudson's claim out of the purchase price of the lease.

Prior to bringing the suit, Davis insisted upon Webster escrowing sufficient funds to satisfy any claim Hudson had and for Webster and Hudson to litigate over the escrowed funds.

The entire record discloses that Davis did not want to and was not willing to take the lease and face a court fight with Hudson.

When we take all of the written evidence and the testimony offered by Davis, by Webster, by Hudson and by the attorney representing Webster, the Honorable Cecil Morgan, it appears to us that the issue of whether or not Davis was entitled to a specific performance of the contract, as is contended for by him in his pleadings and by the judgment he presented to the trial court, was not established by unequivocal and uncontradicted evidence, and the plaintiff Davis requested no issues to establish such contention.

Rule 279, Texas Rules of Civil Procedure, expressly provides: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived."

Appellant's first count—the one on which he contends for a judgment here—is for specific performance. We hold that he waived all issues touching his right to specific performance.

We cannot agree with appellant, on his construction of the contract, to the effect that Webster was bound by the contract to deliver title to Davis as of February 29, 1944, and that the purchaser, Davis, was entitled to the oil runs from and after March 1, 1944, regardless of when the deal was closed.

Neither the contract nor the conduct of the parties after February 29, 1944, warrants such construction as a matter of law.

To us, this appears to be a case in which appellant cannot recover damages when he does not have a contract, the specific performance of which he could have enforced.

In no event could appellant successfully contend that, under the express provisions of the contract, he is entitled to all of the oil runs from and after March 1, 1944, in the event he be entitled to enforce specific performance, and the jury found no issues establishing any such right. None were requested by appellant.

Taking the view we do of the case at bar, under the record as made and presented, we see no necessity for discussing any other point, or issue, raised, and the judgment of the trial court is affirmed.